# EXHIBIT A

**Supreme Court of Pennsylvania**

**Court of Common Pleas**

**Civil Cover Sheet**

__CHESTER__  County

| For Prothonotary Use Only: |
| --- |
| Docket No: |
| **2020-08466-TT** |

*Filed and Attested by PROTHONOTARY 13 Nov 2020 10:32 AM B. Blewitt*

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action**

| ✓ Complaint | ___ Writ of Summons | ___ Petition |
| --- | --- | --- |
| ___ Transfer from Another Jurisdiction | | ___ Declaration of Taking |

| Lead Plaintiff's Name: | Lead Defendant's Name: |
| --- | --- |
| **AQUA PENNSYLVANIA INC** | **NATIONAL FOAM INC** |

| **Are money damages requested?**   ___ Yes  ✓ No | Dollar Amount Requested:   ___ Within arbitration limits |
| --- | --- |
| | (check one)   ✓ outside arbitration limits |

| **Is this a Class Action Suit?** ___ Yes  ✓ No | **Is this an MDJ Appeal?** ___ Yes  ✓ No |
| --- | --- |

Name of Plaintiff/Appellant's Attorney: Robert L Pratter

___ Check here if you have no attorney(are a Self-Represented [Pro Se] Litigant)

**SECTION B**

| **Nature of the Case:** | Place "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** |
| --- | --- |
| | If you are making more than one type of claim, check the one that you consider most important. |

| TORT *(do not include Mass Tort)* | CONTRACT *(do not include Judgments)* | CIVIL APPEALS |
| --- | --- | --- |
| ___ Intentional | ___ Buyer Plaintiff | Administrative Agencies |
| ___ Malicious Prosecution | ___ Debt Collection: Credit Card | ___ Board of Assessment |
| ___ Motor Vehicle | ___ Debt Collection: Other | ___ Board of Elections |
| ___ Nuisance | ___ Employment Dispute: | ___ Dept. of Transportation |
| ___ Premises Liability | ___ Discrimination | ___ Statutory Appeal: Other |
| ✓ Product Liability *(does not include mass tort)* | ___ Employment Dispute: Other | ___ Zoning Board |
| | ___ Other | ___ Other: |
| ___ Slander/Libel/Defomation | | |
| ___ Other: | | |

| MASS TORT | REAL PROPERTY | MISCELLANEOUS |
| --- | --- | --- |
| ___ Asbestos | ___ Ejectment | ___ Common Law/Statutory Arbitration |
| ___ Tobacco | ___ Eminent Domain/Condemnation | ___ Declaratory Judgement |
| ___ Toxic Tort - DES | ___ Ground Rent | ___ Mandamus |
| ___ Toxic Tort - Implant | ___ Landlord/Tenant Dispute | ___ Non-Domestic Relations |
| ___ Toxic Waste | ___ Mortgage Foreclosure: Residential | ___ Restraining Order |
| ___ Other: | ___ Mortgage Foreclosure: Commercial | ___ Quo Warranto |
| | ___ Partition | ___ Replevin |
| **PROFESSIONAL LIABILITY** | ___ Quiet Title | ___ Other: |
| ___ Dental | ___ Other: | |
| ___ Legal | | |
| ___ Medical | | |
| ___ Other Professional | | |

*2020-08466-TT*

**Chester County**
**Court of Common Pleas**
**Cover Sheet**

| Docket No: |
| --- |
| **2020-08466-TT** |

| Plaintiff(s): (Name, Address) | Plaintiff's/Appellant's Attorney(circle one) |
| --- | --- |
| **AQUA PENNSYLVANIA INC** <br><br> 762 LANCASTER AVENUE   BRYN MAWR, PA  19010 | (Name, firm, address, telephone and attorney ID#) <br><br> **Robert L Pratter** <br><br> (215) 567-3500 Cohen, Placitella & Roth, P.C. attorney ID#: <br> 002556 <br><br> 2001 Market Street Suite 2900 Philadelphia, PA 19103 |

| Defendant(s): (Name, Address) | Are there any related cases? Please provide case nos. |
| --- | --- |
| **NATIONAL FOAM INC** <br> 180 SHEREE BLVD SUITE 3900 EXTON EXTON, PA  19341 <br> **ANGUS INTERNATIONAL SAFETY GROUP LTD** <br><br> **KIDDE FIRE FIGHTING, INC.** <br> 400 MAIN STREET   ASHLAND, MA  01720 <br> **KIDDE FENWAL, INC.** <br> 400 MAIN STREET   ASHLAND, MA  01720 <br> **CARRIER GLOBAL CORPORATION** <br> 13995 PASTEUR BOULEVARD   PALM BEACH GARDENS, FL <br> 33418 <br> **ENTERRA CORPORATION** <br> 2000 SAINT JAMES PLACE   HOUSTON, TX  77056 <br> **WEATHERFORD ENTERRA, INC.** <br> 2000 SAINT JAMES PLACE   HOUSTON, TX  77056 | |

**Defendants who are proceeding without counsel are strongly urged to file with the Prothonotary a written statement of an address AND a telephone number at which they can be reached**

Commencement of Action (if applicable): ___ Agreement for an Amicable Action ___ Motion to Confirm Arbitration Award
Notice of Appeal

If this is an appeal from a Magisterial District Judgement, was appellant ___ Plaintiff or ___ Defendant in the original action?

Jury Trial Demanded  ✓ Yes  ___ No

Nature of case if not on previous cover sheet - Please choose the most applicable

| | |
| --- | --- |
| ___ Annulment | ___ Writ of Certiorari |
| ___ Custody - Conciliation Required | ___ Injunctive Relief |
| ___ Custody - Foreign Order | ___ Mechanics Lien Claim |
| ___ Custody - No Conciliation Required | ___ Issuance of Foreign Subpoena |
| ___ Divorce - Ancillary Relief Request | ___ Name Change |
| ___ Divorce - No Ancillary Relief Requested | ___ Petition for Structured Settlement |
| ___ Foreign Divorce | |
| ___ Foreign Protection from Abuse | |
| ___ Paternity | |

*2020-08466-TT*

_ Protection from Abuse

_ Standby Guardianship

| **Arbitration Cases Only** | | **Notice of Trial Listing Date** |
|---|---|---|
| Arbitration Date | mm/dd/yyyy | Pursuant to C.C.R.C.P. 249.3, if this case is not subject to compulsory arbitration it will be presumed ready for trial twelve (12) months from the date of the initiation of the suit and will be placed on the trial list one (1) year from the date the suit was filled unless otherwise ordered by the Court. |
| Arbitration Time | hh:mm:ss | |

Defendants are cautioned that the scheduling of an arbitration date does not alter the duty of the defendant to respond to the complaint and does not prevent summary disposition form occurring prior to the arbitration date.

This matter will be heard by a Board of Arbitrators at the time and date specified but, if one or more of the parties is not present at the hearing, the matter may be heard at the same time and date before a judge of the court without the absent party or parties. There is no right to a trial *de novo* on appeal from a decision entered by a judge.

To obtain relief from automatic trial listing a party must proceed pursuant to C.C.R.C.P. 249.3(b), request an administrative conference and obtain a court order deferring the placement of the case on the trial list until a later date.

**File with:** Chester County Justice Center, Prothonotary Office, 201 W. Market St., Ste. 1425, PO Box 2746, West Chester, PA 19380-0989

These cover sheets must be served upon all other parties to the action immediately after filing.

Submit enough copies for service.

*2020-08466-TT*

*Filed and Attested by*
*PROTHONOTARY*
*13 Nov 2020 10:32 AM*
*B. Blewitt*

**COHEN, PLACITELLA & ROTH, P.C.**
HARRY M. ROTH, ESQ. (PA 39243)
ROBERT L. PRATTER, ESQ. (PA 02556)
MICHAEL COREN, ESQ. (PA 31037)
ERIC S. PASTERNACK, ESQ. (PA 320127)
JARED M. PLACITELLA, ESQ. (PA 321333)
TWO COMMERCE SQUARE, SUITE 2900
PHILADELPHIA, PA 19103
215-567-3500

ATTORNEYS FOR PLAIN~

---

**AQUA PENNSYLVANIA, INC.**
762 Lancaster Avenue
Bryn Mawr, PA 19010

   *Plaintiff,*

v.

**NATIONAL FOAM, INC.,** f/k/a Eurostar US
Tradeco (Holdco) Inc.
180 Sheree Blvd, Suite 3900
Exton, PA 19341
And
**ANGUS INTERNATIONAL SAFETY
GROUP, LTD.,** f/k/a Eurostar Holdco Limited
Station Road, High Bentham, Near
Lancaster, United Kingdom LA2 7NA
And
**KIDDE FIRE FIGHTING, INC.,** f/k/a Chubb
National Foam, Inc., f/k/a National Foam
Systems, Inc.,
400 Main Street
Ashland, Massachusetts 01720
And
**KIDDE FENWAL, INC.**
400 Main Street
Ashland, Massachusetts 01720
And
**CARRIER GLOBAL CORPORATION**
13995 Pasteur Boulevard
Palm Beach Gardens, Florida 33418
And

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

IN THE COURT OF COMMON PLEAS
CHESTER COUNTY, PENNSYLVANIA

CIVIL ACTION-LAW

NO.

JURY TRIAL DEMANDED

**ENTERRA CORPORATION**                          :
2000 Saint James Place
Houston, Texas 77056                             :
And                                              :
**WEATHERFORD ENTERRA, INC.,**
2000 Saint James Place                           :
Houston, Texas 77056

                                                 :
                *Defendants.*
                                                 :


### CIVIL ACTION COMPLAINT

### <u>NOTICE TO DEFEND-CIVIL</u>

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

LAWYER REFERENCE SERVICE
CHESTER COUNTY BAR ASSOCIATION
15 W Gay Street, #2
West Chester, PA 19380
610-692-1889

**COHEN PLACITELLA & ROTH, P.C.**                    *Attorneys for Plaintiff*
Harry M. Roth, Esq. (PA Bar No. 39243)
Robert L. Pratter, Esq. (PA Bar No. 02556)
Michael Coren, Esq. (PA Bar No. 31037)
Eric S. Pasternack (PA Bar No. 320127)
Jared M. Placitella (PA Bar No. 321333)
Two Commerce Square
2001 Market Street, Suite 2900
Philadelphia, PA 19103
Tel: 215-567-3500
Fax: 215-567-6019

| | |
|---|---|
| AQUA PENNSYLVANIA, INC. | IN THE COURT OF COMMON PLEAS |
| *Plaintiff,* | CHESTER COUNTY, PENNSYLVANIA |
| v. | CIVIL ACTION-LAW |
| NATIONAL FOAM, INC., f/k/a Eurostar US Tradeco (Holdco) Inc.; | NO. |
| ANGUS INTERNATIONAL SAFETY GROUP, LTD., f/k/a Eurostar Holdco Limited; KIDDE FIRE FIGHTING, INC., f/k/a National Foam Systems, Inc.,; KIDDE FENWAL, INC.,; CARRIER GLOBAL CORPORATION; ENTERRA CORPORATION; and WEATHERFORD ENTERRA, INC. *Defendants.* | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff AQUA PENNSYLVANIA, INC. ("Plaintiff"), by and through its undersigned

counsel, hereby files this Complaint against Defendants NATIONAL FOAM, INC., f/k/a

Eurostar US Tradeco (Holdco, Inc.), ANGUS INTERNATIONAL SAFETY GROUP, LTD.,

f/k/a Eurostar Holdco Limited, KIDDE FIRE FIGHTING, INC., f/k/a Chubb National Foam,

Inc., f/k/a National Foam Systems, Inc., KIDDE FENWAL, INC., CARRIER GLOBAL

1

CORPORATION, ENTERRA CORPORATION, and WEATHERFORD ENTERRA, INC.

(collectively "Defendants"), and alleges, upon information and belief, as follows:

## I.    __INTRODUCTION__

1.      This action arises from the contamination of Plaintiff's public drinking water system in Chester County ("Water System") with dangerous per- and poly-fluoroalkyl substances ("PFAS") that include perfluorooctanoic acid ("PFOA") and perfluoononanoic acid ("PFNA").

2.      For more than twenty years, Plaintiff has provided water utility services in Chester County, where it currently serves a population of approximately 40,000 customers living in the Borough of West Chester and the adjacent communities of East Bradford and West Goshen Townships.

3.      The Borough of West Chester covers an area of approximately two square miles and lies across two watersheds: Goose Creek, a tributary of the Chester Creek, and Taylor Run, a tributary of the East Branch of the Brandywine Creek. The Borough maintains two wastewater treatment plants, with one serving each watershed. Most of the industrial facilities located in the Borough lie along the Goose Creek watershed and are serviced by the Goose Creek Wastewater Treatment Plant.

4.      Plaintiff's Water System utilizes one groundwater well located in West Chester Borough and three groundwater wells located in East Bradford Township. Plaintiff's Water System also uses two surface water intakes as sources: one that collects surface water from Brandywine Creek and another that collects surface water from Chester Creek.

5.      On information and belief, Defendants are the current and former owners and/or operators of a manufacturing facility located at 350 East Union Street, West Chester, Pennsylvania (the "Union Street facility"), that used, processed, stored, handled, transported, discharged,

2

released, and/or disposed of PFAS or products containing PFAS, which then migrated from that facility to contaminate the water sources utilized by Plaintiff's water system.

6.    For decades, Defendants used the Union Street facility to manufacture fire-fighting foam and other products, including aqueous film-forming foam ("AFFF") products containing PFOA, PFNA, and/or their chemical precursors.

7.    The Union Street facility lies in and along the Goose Creek watershed and is located upstream from Plaintiff's Goose Creek Wastewater Treatment Plant.

8.    In early 2019, Plaintiff began testing surface water at different locations along Goose Creek, which revealed high levels of PFOA and PFNA that increased as the testing locations moved downstream from Defendants' Union Street facility evidencing a connection that site.

9.    In August 2019, the U.S. Environmental Protection Agency ("EPA") mobilized its own field sampling team to test the surface water along the Goose Creek watershed for the presence of PFAS. EPA's testing confirmed Plaintiff's prior results showing significant contamination with PFOA and PFNA that increased as the testing locations moved downstream from Defendants' Union Street facility, evidencing a connection at that site.

10.    Defendants at times material herein knew or should have known that toxic chemicals like PFOA and PFNA bio-accumulate in humans and pose a significant risk to human health at elevated levels of exposure.

11.    Defendants at times material herein knew or should have known that the inadequate use, storage, handling, release, discharge, and/or disposal of PFOA and PFNA posed a foreseeable threat to sensitive receptors such as public water suppliers because all three resist biodegradation, move easily in water, and are expensive to treat.

*2020-08466-TT*

12.     On information and belief, PFOA and/or PFNA contamination caused by Defendants' manufacturing and other activities at the Union Street facility has impacted the drinking water supply utilized by Plaintiff's Water System in West Chester. As a result, Plaintiff will be forced to incur additional expenses such as obtaining new water sources, treating existing sources and/or extending and/or modifying the existing water distribution system in order to provide a reliable source of clean safe water to its customers. Plaintiff will also incur costs for the sampling and testing needed to continue monitoring its water system for PFAS contamination in the future.

13.     Plaintiff brings this action to recover past and future costs associated with investigating, monitoring, remediating, and otherwise responding to the contamination directly and proximately caused by Defendants' use, storage, disposal of and other acts, omissions or activities relating to PFAS or products containing PFAS at the Union Street facility.

## II.     JURISDICTION AND VENUE

14.     Defendant Kidde Fire Fighting, Inc. is subject to general personal jurisdiction under 42 Pa. Cons. Stat. § 5301 because it is a corporation organized under the laws of the Commonwealth of Pennsylvania.

15.     Defendants Angus International Safety Group Ltd., Carrier Global Corporation, Enterra Corporation, Kidde-Fenwal, Inc., National Foam, Inc., and Weatherford Enterra, Inc. are subject to personal jurisdiction in Pennsylvania, including specific personal jurisdiction under 42 Pa. Cons. Stat. § 5322, because, among other things, they regularly transact business in the Commonwealth of Pennsylvania, are the current or former owners of real property in the Commonwealth of Pennsylvania that is the subject of this lawsuit, and have caused harm in the Commonwealth of Pennsylvania through acts or omissions that occurred in the Commonwealth of Pennsylvania.

4

16.    This Court is the proper venue for this case pursuant to 42 Pa. Const. Stat. § 931(c) and Pa. R. Civ. P. 1006 because a substantial part of the events or omissions giving rise to claim occurred in Chester County.

### III.    PARTIES

**A.    Plaintiff**

17.    Plaintiff is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 762 Lancaster Avenue, Bryn Mawr, PA 19010.

18.    Plaintiff owns and operates a water system in Chester County that provides drinking water to approximately 40,000 residents of the Borough of West Chester and the adjacent communities of East Bradford and West Goshen Townships.

19.    Plaintiff's West Chester system draws water from four groundwater wells located in the Borough and East Bradford Township, as well as two intakes that draw surface water from Brandywine Creek and Chester Creek, respectively.

20.    Plaintiff has significant rights and property interests in the waters it appropriates and uses from the four groundwater wells and two surface intakes that supply its water system in West Chester. The past, present, and continuing contamination of those water sources with PFAS, including but not limited to PFOA and/or PFNA, constitutes injury to those interests for which Plaintiff is entitled to, and hereby does, seek damages and other appropriate relief.

**B.    Defendants**

21.    The term "Defendants" refers to all Defendants named herein jointly and severally.

22.    Defendant National Foam, Inc. ("National Foam"), f/k/a Eurostar US Tradeco (Holdco) Inc., is a corporation organized under the laws of the State of Delaware, with its principal

5

place of business located at 141 Junny Road, Angier, North Carolina 27501. National Foam also maintains a business premises at 180 Sheree Blvd, Ste. 3900, Exton, Pennsylvania 19341.

23.     Defendant Angus International Safety Group, Ltd. ("Angus International"), f/k/a Eurostar Holdco Limited, is a foreign private limited company, with offices at Station Road, High Bentham, Near Lancaster, United Kingdom LA2 7NA. On information and belief, AISG is registered in the United Kingdom with a registered number of 8441763. Angus International is sued as an alter ego of National Foam.

24.     Defendant Kidde Fire Fighting, Inc. ("Kidde Fire Fighting"), f/k/a Chubb National Foam, Inc., f/k/a National Foam Systems, Inc., is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business located at 400 Main Street, Ashland, Massachusetts 01721. Kidde Fire Fighting is sued individually and as successor in interest to Chubb National Foam and National Foam Systems.

25.     Defendant Kidde-Fenwal, Inc. ("Kidde-Fenwal") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 400 Main Street, Ashland, Massachusetts 01721. Kidde-Fenwal is sued individually and as successor in interest to Kidde Fire Fighting.

26.     Defendant Carrier Global Corporation ("Carrier Global") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418. Carrier Global is sued as successor in interest to Kidde-Fenwal.

27.     Defendant Enterra Corporation is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 2000 Saint James Place, Houston, Texas 77056.

28.     Defendant Weatherford Enterra, Inc. ("Weatherford Enterra") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 2000 Saint James Place, Houston, Texas 77056. Weatherford Enterra is sued as successor in interest to Enterra Corporation.

29.     On information and belief, Defendants collectively comprise the full set of owners, possessors and operators of the Union Street facility from March 1961 through today.

30.     On information and belief, Defendants used the Union Street facility during that period as a manufacturing site for among other things, firefighting foams, including AFFF that contained PFOA, PFNA, and/or their chemical precursors.

31.     On information and belief, as a result of Defendants' manufacturing activities at the Union Street facility, PFOA, PFNA, and/or their chemical precursors were released into the environment and eventually contaminated Plaintiff's drinking water supply in West Chester.

32.     At all times material herein the Defendants acted by and through their respective agents, servants, officers and employees, actual, apparent or ostensible, any and all of whom were acting then and there withing the course and scope of their actual, apparent or ostensible duties and/or authority.

## IV.     FACTUAL ALLEGATIONS AS TO ALL COUNTS

**A.     Background on PFAS and Their Associated Risks to the Environment and Human Health**

33.     PFAS are chemical compounds containing fluorine and carbon atoms. These substances have been used for decades in the manufacture of, among other things, household and commercial products that resist heat, stains, oil, and water. These substances are not naturally occurring and must be manufactured.

*2020-08466-TT*

34.    The two most widely studied types of these substances are perfluorooctanoic acid ("PFOA") and perfluorooctanesulfonic acid ("PFOS"), which each contain eight carbon atoms.

35.    More recent research has focused on a wider range of PFAS, including perfluoononanoic acid ("PFNA"), a perfluorinated carboxylic acid containing nine carbon atoms. Because PFOA and PFNA are closely related chemicals that share similar properties, information about PFOA can be used when evaluating the environmental and health hazards posed by PFNA.

36.    PFOA and PFNA are characterized by the presence of multiple carbon-fluorine bonds, which are exceptionally strong and stable. As a result, PFOA and PFNA are thermally, chemically, and biologically stable and they resist degradation due to light, water, and biological processes.

37.    PFOA and PFNA have unique properties that cause them to be: (i) mobile and persistent, meaning that they readily spread into the environment where they break down very slowly; (ii) bioaccumulative and biomagnifying, meaning that they tend to accumulate in organisms and up the food chain; and (iii) toxic, meaning they pose serious health risks to humans and animals at elevated levels of exposure. Because of these properties, all three chemicals pose significant threats to public health and the environment.

38.    Bioaccumulation occurs when an organism absorbs a substance at a rate faster than the rate at which the substance is lost by metabolism and excretion. Biomagnification occurs when the concentration of a substance in the tissues of organisms increases as the substance travels up the food chain.

39.    PFOA and PFNA bioaccumulate/biomagnify in numerous ways. First, they are relatively stable once ingested, so that they bioaccumulate in individual organisms for significant periods of time. In humans, PFOA and PFNA remain in the body for years. Additionally, PFOA

8

and PFNA biomagnify up the food chain, such as when humans eat fish that have ingested PFOA, PFOS, or PFNA.

40.     One way that PFOA and PFNA get into the environment is from discharges at industrial facilities that use PFOA and/or PFNA to manufacture other products or chemicals.

41.     PFOA and PFNA can remain in the environment, particularly in water, for many decades and can move through soil and into groundwater or be carried in air.

42.     The extreme persistence of PFOA and PFNA in the environment, along with their toxicity, mobility, and potential for bioaccumulation, pose potential adverse effects to human health and the environment at elevated levels of exposure.

43.     Exposure to elevated levels of PFOA and PFNA can be toxic and may pose serious health risks to humans and to animals. Human health effects associated with exposure to elevated levels of PFOA and PFNA include kidney and testicular cancer, thyroid disease, immune system effects, high cholesterol, ulcerative colitis, liver abnormalities, low birthweight, and pregnancy-induced hypertension (also known as preeclampsia). In laboratory testing on animals, PFOA and/or PFNA have caused the growth of tumors, changed hormone levels, and affected the function of the liver, thyroid, pancreas, and immune system.

44.     These injuries can arise months or years after exposure to PFOA and PFNA.

**B.     Regulatory Response to the Environmental and Human Health Risks Posed by PFAS**

45.     Beginning in 2009, USEPA issued health advisories about the levels of exposure to PFOA and PFOS in drinking water that it believed were protective of public health. As described on USEPA's website, "health advisories are non-enforceable and non-regulatory and provide technical information to states [,] agencies and other health officials on health effects, analytical methodologies, and treatment technologies associated with drinking water contamination."

9

*Drinking Water Health Advisories for PFOA and PFOS, What's A Health Advisory*, available at https://www.epa.gov/ground-water-and-drinking-water/drinking-waterhealth-advisories-pfoa-and-pfos (last visited June 5, 2018).

46.    The recommendations in USEPA's health advisories evolved as USEPA learned more about PFOA and PFOS.

47.    On January 8, 2009 USEPA issued Provisional Health Advisories for PFOA and PFOS, advising that "action should be taken to reduce exposure" to drinking water containing levels of PFOA and PFOS exceeding 400 parts per trillion ("ppt") and 200 ppt, respectively. Provisional Health Advisories for Perfluorooctanoic Acid (PFOA) and Perfluorooctane Sulfonate (PFOS), *available at https://www. cpa.gov/sites/productionlfiles/2015 0-9/documents/pfoa- pfos-provisional.pdf*, at p. 1, n. 1 (last visited June 5, 2018).

48.    On or around May 19, 2016, the USEPA issued updated Drinking Water Health Advisories for PFOA and PFOS, recommending that drinking water concentrations for PFOA and PFOS, either singly or combined, should not exceed 70 ppt. See Lifetime Health Advisories and Health Effects Support Documents for PFOA and PFOS, 81 Fed. Reg. 33,250-51 (May 25, 2016).

49.    As more information about the environmental and health hazards of PFAS has come to light, other governmental bodies have recommended and/or adopted drinking water standards for PFOA and PFNA that are more stringent than the limits announced by EPA in its May 2016 health advisory.

50.    In June 2018, the Agency for Toxic Substances and Disease Registry ("ATSDR") and USEPA released a draft toxicological profile for PFOS and PFOA and recommended the drinking water advisory levels be lowered to 11 ppt for PFOA and 7 ppt for PFOS.

*2020-08466-TT*

51.    In September 2018, the State of New Jersey adopted a drinking water limit of 13 ppt for PFNA.

52.    In April 2019, the State of Minnesota adopted advisory drinking water limits of 15 ppt for PFOS and 27 ppt for PFOA.

53.    In early 2020, two more states adopted drinking water limits for PFOS and PFOA. The State of California adopted drinking water limits of 40 ppt for PFOS and 10 ppt for PFOA in February 2020, while a month later the State of Vermont adopted a limit of 20 ppt for the combined concentration of PFOS, PFOA, and three other PFAS chemicals.

54.    Three more states finalized drinking water limits for PFOS and PFOA in the summer of 2020. The State of New Jersey was the first of three states, adopting limits of 13 ppt for PFOS and 14 ppt for PFOA in June 2020.  New York was next in adopting limits of 10 ppt for both chemicals in late July, followed by Michigan adopting limits of 16 ppt for PFOS and 8 ppt for PFOA in early August.

55.    Most recently, the State of Massachusetts adopted a drinking water limit in October 2020 requiring that the combined concentration of PFOS, PFOA, and four other PFAS chemicals not exceed 20 ppt.

56.    The Commonwealth of Pennsylvania has also started the process of developing potential drinking water limits for PFAS. On September 19, 2018, Pennsylvania's Governor issued Executive Order, No. 2018-08, in response to Pennsylvania's mounting concern over the presence and dangers of PFAS's in the Commonwealth's environment. Determining that there were "public health and environmental concerns regarding PFAS chemicals found in our homes and in our environment, including in contaminated soils, surface water and groundwater, at sites across Pennsylvania, Governor Tom Wolf established a "PFAS Action Team" Among the teams assigned

11

functions and duties were to "ensure the Commonwealth's drinking water is safe by identifying impacted locations and resources and create and implement an action plan to assist state and local authorities and public water systems in delivering safe drinking water. Among the team's projects was the development and adoption of an MCL for certain PFAS.[1] The PFAS Action Team's 2019 Initial Report noted Pennsylvania Department of Environmental Protection's ("PADEP") intent to develop an MCL that PADEP could enforce through its Safe Drinking Water regulations. If it does so, PADEP will publish any proposed MCL, likely in 2020 or 2021.[2]

C.    **Defendants' Manufacture of AFFF Containing PFAS at the Union Street Facility**

57.    On information and belief, National Foam System, Inc. ("National Foam System") acquired the Union Street facility in March 1961 and began using it as a manufacturing site for protein-based firefighting foams.

58.    In the early 1970s, National Foam System added AFFF containing PFOA, PFNA, and/or their chemical precursors to the line of firefighting foam products it manufactured at the Union Street facility.

59.    On information and belief, ownership of the Union Street facility transferred to Enterra Corporation in May 1981. On information and belief, Enterra Corporation was the owner of the Union Street facility from May 1981 until June 1987 and, through its subsidiary National Foam System, operated the facility as a manufacturing site for AFFF containing PFOA, PFNA, and/or their chemical precursors during that entire period.

---

[1] The Executive Order can be accessed at https://www.oa.pa.gov/Policies/eo/Documents/2018-08.pdf.

[2] The 2019 Task Force report is available http://files.dep.state.pa.us/Water/DrinkingWater/Perfluorinated%20Chemicals/Reports/20191205-PFAS-Action-Team-Initial-Report-Pennsylvania.pdf.

12

*2020-08466-TT*

60.     In June 1987, Enterra Corporation sold National Foam System to Racal Chubb Fire Security, Inc. On information and belief, Enterra Corporation later merged with Weatherford International, Inc. to form Weatherford Enterra in 1995.

61.     In anticipation of the sale to Racal Chubb Fire Security, Inc., Enterra Corporation transferred ownership of the Union Street facility back to National Foam System in April 1987. On information and belief, National Foam System was the owner of the Union Street facility from April 1987 until May 1988 and used the facility to manufacture AFFF containing PFOA, PFNA, and/or their chemical during that entire period.

62.     In May 1988, National Foam System changed its name to Chubb National Foam, Inc. ("Chubb National Foam"). On information and belief, Chubb National Foam was the owner of the Union Street facility from May 1988 until July 2000 and used the facility to manufacture AFFF containing PFOA, PFNA, and/or their chemical precursors during that entire period.

63.     In July 2000, Chubb National Foam was broken up as part of the divisive merger and restructuring of its parent company, Williams Holdings, into Chubb plc and Kidde plc. After Williams Holdings demerged, Kidde, plc became the successor in interest to National Foam System.

64.     In January 2002, Kidde, plc changed the name of its National Foam System subsidiary to Kidde Fire Fighting, with ownership of the Union Street facility passing to Kidde Fire Fighting in the process. On information and belief, Kidde Fire Fighting was the owner of the Union Street facility from January 2002 until March 2007 and used the facility to manufacture AFFF containing PFOA, PFNA, and/or their chemical precursors during that entire period.

65.     On information and belief, ownership of the Union Street facility passed to Kidde-Fenwal following its merger with Kidde Fire Fighting in March 2007. On information and belief,

2020-08466-TT

Kidde-Fenwal was the owner of the Union Street facility from March 2007 until June 2013 and used the facility to manufacture AFFF containing PFOA, PFNA, and/or their chemical precursors during that entire period.

66.     In June 2013, the National Foam System business separated from Kidde-Fenwal and its parent company, United Technologies Corporation, after which it was acquired by Eurostar Holdco Limited. In March 2020, United Technologies Corporation spun off the balance of its fire and security business to form Carrier Global. On information and belief, Carrier Global became successor in interest to Kidde-Fenwal as a consequence of the March 2020 spin off.

67.     Following Eurostar Holdco Limited's acquisition of the National Foam System business, ownership of the Union Street facility was transferred from Kidde-Fenwal to Eurostar US Tradeco (Holdco) Inc. in August 2013. Around the same time, Eurostar US Tradeco (Holdco) Inc. changed its name to National Foam, and about a year later Eurostar Holdco Limited changed its name to Angus International.

68.     On information and belief, in early 2016, National Foam moved its manufacturing operations from the Union Street facility to a new facility located in Angier, North Carolina. On information and belief, National Foam is still the current owner of the Union Street facility.

69.     On information and belief, since acquiring what would become National Foam in June 2013, Angus International has exercised complete dominion and control over National Foam, such that the two entities are alter egos and the acts of National Foam as alleged in this Complaint are also the acts of Angus International.

70.     On information and belief, National Foam has not only been dominated, influenced and governed by Angus International, but there exists such a unity of interest and ownership that

14

the individuality, or separateness, of National Foam and Angus International has ceased and adherence to the fiction that they are distinct entities would promote injustice.

71.     On information and belief, this unity of interest and ownership between Angus International and National Foam is evidenced by the following:

     a.  Angus International's exercise of complete ownership and control over National Foam through its two holding companies, National Foam Holdco and Angus Holdings;

     b.  National Foam Holdco's and Angus Holdings' failure to observe corporate formalities, including but not limited to their failure to hold regular board meetings;

     c.  National Foam's failure to observe corporate formalities, including but not limited to its failure to issue separate financial statements or pay dividends to shareholders;

     d.  The absence of any formal agreements governing loans or services provided by Angus International to National Foam and the other entities it controls;

     e.  The comingling of assets between Angus International, National Foam, and the other entities Angus International controls; and

     f.  The centralization of corporate functions and business operations by Angus International across National Foam and the other entities it controls, including but not limited to product development efforts, supply chain control, and the purchase of liability insurance.

72.     On information and belief, from approximately 1970 through 2016, Defendants used the Union Street facility to manufacture AFFF containing PFOA, PFNA, and/or their chemical precursors.

*2020-08466-TT*

73.     On information and belief, Defendants used Forafac 1157N as the fluorosurfactant for many of the AFFF products they manufactured during this period, which can degrade to PFNA and PFOA in the environment.

74.     On information and belief, Forafac 1157N contains a mixture of fluorotelomer sulfonamide alkylbetaine (FTAB) of four different chain lengths: 6:2, 8:2, 10:2, and 12:2.

75.     On information and belief, 10:2 and 12:2 FTAB can degrade to PFNA in the environment.

76.     On information and belief, 8:2 FTAB can degrade to PFOA in the environment.

77.     In 2013, a group of researchers specifically identified PFOA and PFNA as degradation products of National Foam brand AFFF manufactured and sold to the U.S. military by Kidde Fire Fighting and Kidde-Fenwal.

**D.     Defendants' Contamination of the Goose Creek Watershed**

78.     In February 2019, Plaintiff began testing the surface water at different locations along the Goose Creek watershed for the presence of multiple PFAS chemicals, including PFOA and PFNA. Specifically, Plaintiff performed PFAS testing of the surface water at four locations between Union Street and the Goose Creek Wastewater Treatment Plant discharge site.

79.     Moving in order downstream, Plaintiff tested samples collected from the following four locations: (1) Union Street; (2) Fenceline; (3) Lacey Street; and (4) Nields Street. Results from the initial testing performed for PFOA and PFNA at each site were as follows:

| Testing Site – Collection Date | PFOA (ppt) | PFNA (ppt) |
|---|---|---|
| Union St. – 2/6/2019 | 24 | 14 |
| Fenceline – 2/22/2019 | 29 | 490 |
| Lacey Street – 2/6/2019 | 111 | 1,704 |
| Nields Street – 2/6/2019 | 55 | 1,133 |

16

80.     In August 2019, the EPA did its own testing of the surface water along the Goose

Creek watershed for the presence of PFAS chemicals. EPA collected samples from the four

locations Plaintiff had tested earlier in the year, along with an additional samples from the

following five locations: (1) Montgomery Avenue; (2) Westtown Road; (3) Greenfield Park; (4)

Mostellar Park; and (5) upstream from the Goose Creek POTW discharge.

81.     Moving in order downstream, the PFOA and PFNA results for the nine locations

EPA tested were:

| Testing Site – Collection Date | PFOA (ppt) | PFNA (ppt) |
|---|---|---|
| Montgomery Avenue – 8/28/2019 | 17 | N/A |
| Westtown Road – 8/28/2019 | 53.9 | 11.3 |
| Union St – 8/28/2019 | 19.1 | 16.8 |
| Fenceline – 8/28/2019 | 17.9 | 42.1 |
| Lacey Street – 8/28/2019 | 40.7 | 685 |
| Nields Street – 8/28/2019 | 43 | 951 |
| Greenfield Park – 8/28/2019 | 48.2 | 950 |
| Mosteller Park – 8/28/2019 | 62.1 | 1,810 |
| Goose Creek POTW – 8/29/2019 | 61.4 | 870 |

82.     In November 2019, EPA issued a report with the results from its testing of the Goose

Creek watershed. In that report, the EPA stated that its results were "generally consistent" with

Plaintiff's testing in February 2019 and "confirm[ed] the presence of certain PFAS in Goose

Creek."

83.     Discussing the testing results for PFNA and PFOS, EPA observed in that same

report:

> Surface water samples from Goose Creek show a marked rise in PFNA
> (Perfluorononanoic acid) beginning at Lacey Street (685 ppt) and
> continuing downstream to Nields Street (951 ppt), Greenfield Park (950
> ppt), Mosteller Park (1,810 ppt), and Goose Creek 75-100 meters
> upstream of the POTW discharge (870 ppt).
>
> A rise in PFOS (Perfluorooctane sulfonate) is also observable in Goose
> Creek surface water near Mosteller Park, where the PFOS concentration
> was 704 ppt. USEPA has established a Health Advisory Level for PFOS

17

and PFOA in drinking water of 70 ppt. Although these samples were not drinking water samples, they represent source water for Public Water Systems.

84.    In September 2019, Plaintiff embarked on additional testing aimed at identifying potential sources of the contamination confirmed by EPA in August. Plaintiff started by testing a municipal stormwater outfall (Outfall 21) adjacent to the western end of National Foam's Union Street facility and located immediately upstream from the Lacey Street testing site.

85.    Plaintiff's testing showed extremely high concentrations of PFOA and PFNA in the surface water of Outfall 21:

| Testing Site – Collection Date | PFOA (ppt) | PFNA (ppt) |
|---|---|---|
| Outfall 21 – 9/4/2019 | 293 | 11,340 |

86.    Plaintiff also tested a municipal stormwater outfall (Outfall 37) running along the east side of National Foam's Union Street facility. Like Outfall 21, Plaintiff's testing showed very high concentrations of PFOA and PFNA in the surface water of Outfall 37:

| Testing Site – Collection Date | PFOA (ppt) | PFNA (ppt) |
|---|---|---|
| Outfall 37 – 9/13/2019 | 160 | 2,810 |
| Outfall 37 – 9/23/2019 | 119 | 1,352 |

87.    Additionally, Plaintiff collected two additional surface water samples from the Mostellar Park site tested by EPA, which detected similarly high levels of PFOA and PFNA:

| Testing Site – Collection Date | PFOA (ppt) | PFNA (ppt) |
|---|---|---|
| Mostellar Park – 9/25/2019 | 63 | 823 |
| Mostellar Park – 10/15/2019 | 80 | 990 |

**E.    Contamination of Plaintiff's Water System and Resulting Damages**

88.    As EPA acknowledged in its November 2019 report, although the samples tested by Plaintiff and EPA were not drinking water samples, they did represent source water for Plaintiff's water system in West Chester.

18

89.     One of the sources for Plaintiff's water system in West Chester is a surface water intake along the Chester Creek watershed that is located approximately thirteen miles downstream from the Union Street facility.

90.     After EPA issued its report in November 2019, Plaintiff tested the surface water at its Chester Creek intake for the presence of multiple PFAS chemicals, including PFOA and PFNA.

91.     Plaintiff's testing has revealed PFOA and PFNA levels that exceed drinking water limits that have recently been adopted in some states for those compounds.

92.     As a result of the presence of the PFAS chemicals in the source water for Plaintiff's Water System, Plaintiff has incurred and will be forced to incur costs associated with investigating, monitoring, remediating, and otherwise responding to the contamination of its Water System in West Chester to stem the threat to public health and the environment caused by Defendant.

93.     Specifically, Plaintiff has incurred and will be forced to incur significant costs relating to all or some of the following: (a) sampling its water for PFOS and PFOA for the next 100 years, (b) obtaining new water sources or extending and/or modifying the existing water distribution system; (c) designing, constructing, operating and/or maintaining treatment systems to clean the water and remove the PFAS contamination; (d) studying the causes of PFAS contamination; and (e) investigating the existing or potential changes in the character of the sources of water supply.

94.     Plaintiff should not have to bear these costs; they should be borne by Defendants who are responsible for the contamination of Plaintiff's Water System with PFOA and PFNA.

## COUNT I
### (Negligence)

95.     Plaintiff hereby repeats, realleges, and reiterates each and every allegation in the preceding paragraphs as if fully restated herein.

96.     Defendants owed a duty of care to Plaintiff to use, handle, store, process, transport, contain, and dispose of hazardous chemical products in a safe and reasonable manner.

97.     Defendants breached their duty by negligently using, handling, storing, processing, transporting, releasing, disposing of, and/or discharging PFOA and PFNA into the environment, even when it knew or should have known about the dangers these toxic chemicals posed to drinking water supply.

98.     Defendants further breached their duty or duties by failing to respond to, arrest, contain and stem the transport and migration of the surface water contamination it caused or contributed to and prevent it from reaching Plaintiff's drinking water supply.

99.     Defendants knew or should have known that safety precautions would be required to prevent the release of PFOA and PFNA into the surrounding environment.

100.     Defendants knew or should have known that its activities and conduct resulting in releasing, disposing of, and/or discharging PFOA and PFNA was hazardous to the environment and to human health.

101.     Defendants owed a duty to Plaintiff to ensure that their manufacturing and chemical handling and waste management activities at the Union Street facility were performed in a safe manner in order to prevent the toxic exposure and imminent and substantial health threat to Plaintiff's drinking water supply.

102.     Knowing of the dangerous and hazardous properties of PFOA and PFNA, Defendants had a duty to warn of the hazards associated with the chemicals entering and poisoning

20

the environment and drinking water. In particular Defendants has a duty to notify and warn utility and governmental entities in the area of the of the Union Street Facility, of which Plaintiff was one.

103.   Upon learning of the release of the contaminants, Defendants owed a duty to warn and notify Plaintiff of the release of the contamination before polluting Plaintiff's drinking water supply.

104.   Defendants' failure to notify the Plaintiff in a timely manner of the contamination of its drinking water supply, and, consequently, the presence of PFOA and PFNA in that water supply constitutes another breach of the duties Defendants owed to Plaintiff.

105.   Defendants further breached their duty to Plaintiff by failing to take reasonable, adequate, and sufficient steps or actions to eliminate, correct, or remedy any contamination after it occurred.

106.   Negligence may exist both as an omission as well as an affirmative act. A cause sounding in negligence allows for recovery for an injury that was proximately caused by another's violation of a duty of reasonable care.

107.   As such, the Defendants negligently, gross negligently, recklessly, willfully, wantonly, and/or intentionally breached its legal duty or duties to Plaintiff, proximately causing the contamination of Plaintiff's drinking water supply.

108.   As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has suffered damages from contamination of its drinking water supply with PFAS chemicals, including the costs incurred and to be incurred in investigating and responding to that contamination, capital costs expended on treatment systems along with piping and other

modifications to the supply system, past and future operation and maintenance of the treatment system, the cost of repair or restoration, investigative costs, engineering costs and sampling costs.

109.    Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage by contaminating Plaintiff's drinking water supply with PFOA and PFNA. Defendants' actions in causing said contamination were done with actual malice, and in wanton and willful and/or reckless disregard for the rights, health, and property of Plaintiff and Plaintiff's customers.

110.    Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

## COUNT II
### (Public Nuisance)

111.    Plaintiff hereby repeats, realleges, and reiterates each and every allegation in the preceding paragraphs as if fully restated herein.

112.    Defendants owned and operated the Union Street facility where PFOA and PFNA were released, disposed of, and/or discharged for decades in a dangerous way.

113.    Defendants have processed. transported, manufactured, supplied, consumed, used, utilized, stored, handled, and/or disposed of PFOA and PFNA in a manner that created a public nuisance and that unreasonably injured Plaintiff, causing inconvenience and annoyance.

114.    The improper use, handling, storage, release, discharge, and/or disposal of PFOA and PFNA has contaminated both the environment and Plaintiff's rights as a public utility, property interests, and drinking water supply, thus causing a public nuisance.

115.    The above-described affirmative, voluntary, and intentional acts were performed with the reckless disregard of the potential for PFOA and/or PFNA to contaminate surface and

*2020-08466-TT*

groundwater causing a substantial interference with Plaintiff's drinking water supply in West Chester.

116.     Defendants' negligent, reckless, willful, and/or wanton actions and/or intentional failures to act caused an unknown quantity of PFOA and PFNA to be released into Plaintiff's drinking water supply, interfering with the health, safety, or comfort of a considerable number of persons.

117.     The potential dangers posed by PFOA and PFNA has caused Plaintiff significant inconvenience and expense, both past and current, by interfering with the Water System.

118.     The public nuisance caused by Defendants has substantially and unreasonably interfered with, obstructed and/or threatened, among other things, the Plaintiff's interests in the waters of the Commonwealth, as well as the Plaintiff's ability to protect, conserve and manage its public water system resource.

119.     The public nuisance caused by Defendants is of a continuing nature and has produced a long-lasting effect upon the waters of the Commonwealth, a resulting harmful impact Defendants knew or had reason to know at all times material hereto was likely to occur.

120.     As a direct and proximate result of Defendants' acts and omissions creating the above-described nuisance, Plaintiff has suffered damages from contamination of its drinking water supply with PFAS chemicals, including the costs incurred and to be incurred in responding to that contamination, capital costs expended on treatment systems along with piping and other modifications to the supply system, past and future operation and maintenance of the treatment system, the cost of repair or restoration, investigative costs, engineering costs and sampling costs.

23

121.    Defendants are liable to Plaintiff for all resulting damages, including the costs incurred and to be incurred in responding to the contamination of Plaintiff's drinking water supply with PFOA, PFOA, and PFNA.

122.    On information and belief, Defendants' conduct involved wanton, willful, and/or a conscious and reckless disregard for the health, safety, property, and rights of others. Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

123.    Defendants' actions and omissions in causing PFAS to enter and pollute the waters of the Commonwealth violate, *inter alia*, the Pennsylvania Storage Tank and Spill Prevention Act and the Pennsylvania Clean Streams Law, 35 P.S. §§ 691.1 *et seq.*, and constitute a public nuisance *per se* under Pennsylvania law.

**COUNT III**
**(Private Nuisance)**

124.    Plaintiff hereby repeats, realleges, and reiterates each and every allegation in the preceding paragraphs as if fully restated herein.

125.    Defendants owned and operated the Union Street facility where PFOA and PFNA were released, disposed of, and/or discharged for decades in a dangerous way.

126.    The improper use, handling, storage, release, discharge, and/or disposal of PFOA and PFNA has contaminated both the environment and Plaintiff's property and drinking water supply creating a private nuisance.

127.    The private nuisance caused by Defendants has substantially and unreasonably interfered with, obstructed and/or threatened, among other things, the Plaintiff's interests in the waters of the Commonwealth, as well as the Plaintiff's ability to protect, conserve and manage its public water system water supply resource.

24

128.    The private nuisance caused by Defendants is of a continuing nature and has produced a long-lasting effect upon the waters of the Commonwealth, a resulting harmful impact Defendants knew or had reason to know at all times material hereto was likely to occur.

129.    The above-described affirmative, voluntary, and intentional acts were performed with reckless disregard of the potential for PFOA and PFNA to be disbursed through the water causing a substantial interference with the drinking water supply upon which Plaintiff relies.

130.    Defendants' negligent, reckless, willful, and/or wanton actions and/or intentional failures to act caused an unknown quantity of PFOA and PFNA to be released into Plaintiff's drinking water supply and unreasonably interfered with Plaintiff's ability to serve clean and safe water to its customers.

131.    The potential dangers posed by PFOA and PFNA has caused Plaintiff significant inconvenience and expense, interfering with West Chester's water supply.

132.    As a direct and proximate result of Defendants' acts and omissions creating the above-described nuisance, Plaintiff has suffered damages from contamination of its drinking water supply with PFAS chemicals, including the costs incurred and to be incurred in responding to that contamination, capital costs expended on treatment systems along with piping and other modifications to the supply system, past and future operation and maintenance of the treatment system, the cost of repair or restoration, investigative costs, engineering costs and sampling costs.

133.    Defendants are liable to Plaintiff for all resulting damages, including the costs incurred and to be incurred in responding to the contamination of Plaintiff's drinking water supply with PFOA, PFOA, and/or PFNA.

134.    On information and belief, Defendants' conduct involved wanton, willful, and/or a conscious and reckless disregard for the health, safety, property, and rights of others. Therefore,

Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

## COUNT IV
### (Statutory Violations and Nuisance)

135.    Plaintiff hereby repeats, realleges, and reiterates each and every allegation in the preceding paragraphs as if fully restated herein.

136.    Defendants' actions and omissions in discharging releasing and otherwise causing PFAS to enter and pollute the waters of the Commonwealth violate, *inter alia*, the Pennsylvania Hazardous Sites Cleanup Act, 35 P.S. §§ 4001 — 4015 ("HSCA"); the Pennsylvania Storage Tank and Spill Prevention Act (if and to the extent the releases of PFAS came from regulated storage tanks), and the Pennsylvania Clean Streams Law, 35 P.S. §§ 691.1 et seq. to the extent PFAS were discharged or released into the Waters of the Commonwealth. Such violations constitute a public nuisance *per se* under Pennsylvania law .

137.    The direct harms and statutory public nuisance caused and  inflicted by Defendants' violations of one or more of these Pennsylvania environmental laws, which are intended to protect Plaintiff and other Commonwealth Citizens, has substantially and unreasonably interfered with, obstructed and/or threatened, among other things, the Plaintiff's interests in the waters of the Commonwealth, as well as the Plaintiff's ability to protect, conserve and manage its public water system  water supply resource.

138.    The statutory public nuisance caused by Defendants is of a continuing nature and has produced a long-lasting effect upon the waters of the Commonwealth, a resulting harmful impact Defendants knew or had reason to know at all times material hereto was likely to occur.

26

## COUNT V
## Negligent Failure to Warn

139.    Plaintiff hereby repeats, realleges, and reiterates each and every allegation in the preceding paragraphs as if fully restated herein.

140.    Defendants failed to employ the care that a reasonably prudent person would employ under the circumstances by allowing hazardous PFOA and PFNA to be transported, used, utilized, stored, dumped, handled and/or disposed while operating the Union Street facility, which led to their release into the soil, surface water, and immediate environment.

141.    Defendants knew or should have known that the manner in which toxic products containing PFOA and PFNA were, processed, transported, used, utilized, stored, dumped, handled, responded to  and/or disposed of at the Union Street facility would result in the contamination of Plaintiff's drinking water supply.

142.    Defendants have negligently, gross negligently, recklessly, willfully, wantonly, and/or intentionally caused the immediate and continuing contamination of water and soil that threatens to further contaminate the drinking water supply of area residents.

143.    Defendants had a duty to warn Plaintiff that the aforementioned releases of toxic substances, including but not limited to PFOA and PFNA, had occurred and that migration of those substances could foreseeably contaminate the area in Chester County which Plaintiff relies on for its drinking water supply.

144.    Defendants breached that duty by failing to warn Plaintiff about the migration of PFOA and PFNA from the Union Street facility, which led to the contamination of Plaintiff's drinking water supply.

145.    As a result of Defendants' breach of their respective duties to warn, Plaintiff was forestalled from undertaking timely and effective remedial measures, forcing it to expend millions

27

*2020-08466-TT*

of dollars and significant resources to test, monitor, and remediate the effects of Defendants' negligence for many years into the future.

146.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has suffered damages from contamination of its drinking water supply with PFAS chemicals, including the costs incurred and to be incurred in responding to that contamination, capital costs expended on treatment systems along with piping and other modifications to the supply system, past and future operation and maintenance of the treatment system, the cost of repair or restoration, investigative costs, engineering costs and sampling costs.

147.    On information and belief, Defendants' conduct involved wanton, willful, and/or a conscious and reckless disregard for the health, safety, property, and rights of others. Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

## COUNT VI
### (Trespass)

148.    Plaintiff hereby repeats, realleges, and reiterates each and every allegation in the preceding paragraphs as if fully restated herein.

149.    Defendants' intentional acts and/or omissions caused toxic substances, including but not limited to PFOA and PFNA, to be spilled or disposed of and released into the environment at the Union Street facility and causing the intrusion of contaminated water into Plaintiff's drinking water supply which was substantially certain to occur under the circumstances.

150.    Defendants' intentional acts and/or omissions caused toxic substances, including but not limited to PFOA and PFNA, to enter and trespass upon Plaintiff's land, property and utility rights without consent and interfered with Plaintiff's exclusive possession and/or right of

possession, resulting in a non-permissive entry of contaminated groundwater entering Plaintiff's property and drinking water supply.

151.  Upon information and belief, Defendants affirmatively, voluntarily, and intentionally failed to act in a manner that would prevent further migration of the contaminants into Plaintiff's drinking water supply.

152.  Defendants knew or should have known that failing to properly remediate the contamination would inevitably by the forces of nature, result in a trespass, or further trespass, upon Plaintiff's property and exacerbate the harm to Plaintiff's drinking water supply.

153.  Defendants' actions in discharging, releasing, and/or disposing of PFOA and PFNA were done with actual malice, and in wanton and willful and/or reckless disregard for Plaintiff's and Plaintiff's customers' rights, health, and property.

154.  As a direct and proximate result of the foregoing trespass by Defendants, Plaintiff has suffered damages from contamination of its drinking water supply with PFAS chemicals, including the costs incurred and to be incurred in responding to that contamination, capital costs expended on treatment systems along with piping and other modifications to the supply system, past and future operation and maintenance of the treatment system, the cost of repair or restoration, investigative costs, engineering costs and sampling costs.

155.  On information and belief, Defendants' conduct involved wanton, willful, and/or a conscious and reckless disregard for the health, safety, property, and rights of others. Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

29

*2020-08466-TT*

## COUNT VII
### (Negligence *Per Se*)

156.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

157.    Defendants had a duty to comply with applicable laws, regulations, and guidelines applicable to persons transporting, consuming, utilizing, storing, using, distributing, and/or disposing of hazardous materials, including but not limited to PFOA and PFNA

158.    Upon information and belief, Defendants failed to operate the Union Street facility in compliance with the applicable laws and regulations relevant to air, soil, and water quality protection. These laws and regulations were intended for the protection of public and private health, safety, property, and economic interests.

159.    Plaintiff is a member of the group(s) whose protection was intended by the drafters of such laws and regulations.

160.    These violations were a direct and proximate cause of the substantial damages and imminent, substantial, and impending harm to Plaintiff's drinking water supply.

161.    The risk of damages and the imminent, substantial, and impending harm to Plaintiff are precisely the types of injuries the applicable laws were designed to prevent.

162.    Violations of these laws and regulations thereby constitute per se negligence. The amount of damages for the injuries will be established at the time of trial.

## COUNT VIII
### (Punitive Damages)

163.    Plaintiff hereby repeats, realleges, and reiterates each and every allegation in the preceding paragraphs as if fully restated herein.

30

*2020-08466-TT*

164.    Upon information and belief, Defendants engaged in willful, wanton, malicious, and or/reckless conduct that caused the foregoing nuisances and injuries upon the property of Plaintiff, disregarding its protected rights.

165.    This conduct by Defendants includes but is not limited to:

a)      issuing no warnings and failing to divulge material information concerning the release of PFAS, including but not limited to PFOA and PFNA;

b)      knowing of the probability of long-lasting water contamination, including specifically high risks to aquifers, groundwater and production areas, using, processing, transporting, discharging, releasing, disposing and/or storing of products containing PFOA, PFOS and PFNA, demonstrating an outrageous conscious disregard of Plaintiff and its customers' safety with implied malice and oppression for which punitive and exemplary damages should be imposed; and

c)      knowing of the certainty of long-lasting water contamination, including specifically high risks to aquifers, groundwater and production areas by toxic products containing PFAS, demonstrating an outrageous conscious disregard of Plaintiff and Plaintiff's customers' safety with implied malice and oppression.

166.    Defendants' willful, wanton, malicious, and/or reckless conduct includes, but is not limited to, Defendants' failure to take all reasonable measures to ensure hazardous chemicals such as PFOA and PFNA would be effectively disposed of and not discharged into the surrounding environment and inevitably contaminate the drinking water supply system operated by Plaintiff.

167.    Defendants have caused great harm to the Plaintiff's wells and demonstrated an outrageous conscious disregard for its rights and its customers' safety with implied malice, warranting the imposition of punitive damages.

*2020-08466-TT*

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff demands judgment against Defendants, and each of them, jointly and severally, and request the following relief from the Court:

    A.  Compensatory damages;

    B.  Punitive damages;

    C.  Reasonable fees for attorneys and expert witnesses where available under law;

    D.  Costs and expenses of this lawsuit;

    E.  Interest on the damages according to law;

    F.  Such equitable relief as is necessary and warranted to abate the nuisance or nuisances created by Defendants; and

    G.  Any other and further relief as the Court deems just, proper and equitable

## JURY DEMAND

Plaintiff demands a trial by jury of 12 members on all claims asserted in this Complaint so triable.

Dated:    November 11, 2010

                */s/ Robert L. Pratter*
                **COHEN PLACITELLA & ROTH, P.C.**
                Harry M. Roth, Esq. (PA Bar No. 39243)
                Robert L. Pratter, Esq. (PA Bar No. 02556)
                Michael Coren, Esq. (PA Bar No. 31037)
                Eric S. Pasternack (PA Bar No. 320127)
                Jared M. Placitella (PA Bar No. 321333)
                Two Commerce Square
                2001 Market Street, Suite 2900
                Philadelphia, PA 19103
                Tel: 215-567-3500
                Fax: 215-567-6019
                *Attorneys for Plaintiff*

*2020-08466-TT*

*Of Counsel:*

**NAPOLI SHKOLNIK PLLC**
Paul J. Napoli, Esq. (*Pro Hac Vice Motion to Be Filed*)
Andrew W. Croner, Esq. (*Pro Hac Vice Motion to Be Filed*)
360 Lexington Avenue, 11th Fl.
New York, New York 10017
(212) 397-1000

33

DocuSign Envelope ID: FA78EF6B-77E5-4B35-BD05-38C81DB75984

**VERIFICATION**

     I,  Marc A. Lucca,  President of Aqua Pennsylvania, Inc., do hereby verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief, and that I understand that the statements herein are subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

DocuSigned by:

*Marc Lucca*

4EA22E4AF39946E

MARC A. LUCCA, President

11/11/2020

Dated: _____

*2020-08466-TT*